In re MATTHEWS.

(District Court, E. D. North Carolina. September 12, 1904.)

**1. BANKRUPTCY—SURETY DEBTS—DIVIDENDS ON CLAIMS SECURED BY COLLATERAL.**

Creditors who have proved claims against the estate of a bankrupt, on which he was liable as surety or indorser, and which are also secured by collateral, will be required to exhaust the collateral before receiving dividends, and are entitled to dividends only on the balance due after the proceeds of the collateral have been credited.

In Bankruptcy. On question certified from referee.

Guthrie & Guthrie, for petitioner.

Foushee & Manning, for creditors.

PURNELL, District Judge. B. W. Matthews was duly adjudged a bankrupt, and the cause regularly proceeded with until the first dividend sheet was presented, when the referee recommended that the

dividend on claims Nos. 1, 3, and 5 be ordered held until the creditors who claimed the same satisfy the court that the amounts which they have proved for respectively are the correct amounts which they are entitled to under Bankr. Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]. This order was approved and the amounts held. Claim referred to as No. 1, proved by P. H. Gorman, of Lancaster, Pa., for $11,376.66. Claim No. 3, proved by W. T. Lipscomb & Co., $5,274.93. Claim No. 5, by the American National Bank, Richmond, Va., for $486.68.

The question presented by the certificate of the referee is whether a creditor who has been allowed to prove his claim as an unsecured creditor against a surety or indorser must realize and credit the proceeds of collateral securities held by him against the principal debtor before being allowed to participate in the distribution of the estate of the surety or indorser. It is alleged in the petition of the bankrupt, and not controverted, that Matthews was an accommodation indorser, but this can make no material difference, as the laws of North Carolina would allow the creditor to proceed against the principal or the surety separately, if he so elected. The creditors were allowed to prove for the full amount of their claim as unsecured creditors, and this was in accordance with the decisions which counsel cite in their brief. The question is not as to proof of claim, but as to payment of the dividend. Nor can the question of subrogation ably argued in the briefs affect the decision of the question at issue in the case at bar, for the settlement of the estate in bankruptcy is a finality as to the bankrupt, and no resulting interest could inure to his benefit or to the benefit of his estate. The law does not contemplate a circuitous proceeding, but a closing of the estate of the bankrupt in an equitable distribution of his assets after the allotment to him of his exemptions and his discharge from his debts. As to former debts, he is commercially dead.

It appears by the record that claim No. 1 was a promissory note indorsed by the bankrupt and P. H. Gorman, and the principal of said note, J. N. Gorman, at the time of making the same, deposited therewith as collateral 96 shares of the capital stock of the Gorman-Wright Company, of Richmond, Va. The payment of the dividend on this note was objected to by creditor R. H. Wright, who occupied a similar relation to the estate, on the ground that the said P. H. Gorman may exhaust the collateral deposited with his note at the time of making the same, and apply the proceeds of said collateral so deposited that said B. W. Matthews is liable for that portion of debt which the collateral fails to satisfy. The referee held that the bankrupt's estate is entitled to the same legal rights as to any debts due a creditor which the bankrupt would have had had not the bankruptcy intervened, and required the creditor to so apply the collateral security deposited at the time the note was made.

Claim No. 3 was a promissory note made by the Gorman-Wright Company, upon which the bankrupt is an indorser. There were hypothecated with the note warehouse receipts set out in the proof of the claim, on which it seems to be admitted the creditor has received $1,073.50, and other collateral security deposited is worthless. The referee held that the creditor shall give due credit on the claim for

amounts received from collateral for whom the creditor was surety, and from this the creditor appeals.

The fifth claim is a promissory note indorsed by Matthews, on which there is a credit of a small amount. In regard to this note the referee says:

"Before being entitled to share in any dividends belonging to the estate of the bankrupt, the creditors shall give due credit on the claim for any amount they may have received from collateral of the principal for whom the bankrupt is surety."

On collateral deposited by the principal for the loan evidenced by the promissory note set out in proof of claim attached which the bankrupt indorsed, the referee further says:

"It is not clear to your referee's mind whether collateral held by the creditor the American National Bank was pledged to the creditor for the debt which it was sought to have allowed as a valid unsecured claim against the bankrupt's estate. It seems that the depositions taken at the hearing in Richmond, Va., the creditor has not stated frankly just what collateral has been pledged, and upon what specific debts of the said J. N. Gorman he holds the same as security. In the proof of the claim it is alleged that no collateral was pledged at the time of making this debt or for it, and that the money was advanced solely upon the indorsement of the said B. W. Matthews, bankrupt. The depositions taken at Richmond, Va., in this particular matter on July 24, 1904, would seem to support the contention of the creditor but for the fact that there is apparent throughout the evidence a disinclination to say just what collateral had been pledged with the bank, and for what special debts of the principal debtor for whom the bankrupt was indorser in this particular matter."

It appears that R. H. Wright, the objecting creditor, also proved a claim for which he held collateral security, to wit, a mortgage on certain property of the principal debtor, and that pending the proceedings an order was entered requiring creditors to realize on any collaterals they might hold. This Wright did, and reported the same to the referee; the amount realized being duly credited on his claim. The claimants above referred to did not comply with the order of the referee, but claim their whole debt without such credits. Bankruptcy means equity, and it is expressly provided in the act that equity rules shall apply to proceedings in bankruptcy. It would be inequitable to permit a creditor to withhold a credit on a debt on which the bankrupt is surety and collect his whole debt. He certainly can claim nothing against the surety which he could not claim against the principal. The court is not inadvertent to the authorities cited in the briefs, but, as will be seen, they have no application to the case at bar. The claims have been proved in accordance with the decisions as unsecured claims, and allowed to participate in the proceedings of bankruptcy as such; but in the distribution of the estate the rules in equity apply, and not the rules of law.

The referee is sustained and affirmed in his rulings.